IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JAMES F. HYMES ) | |
| ) | CASE NO. 5: 08 CV 0203 |
| Plaintiff, ) | |
| ) | JUDGE JOHN R. ADAMS |
| vs. ) | |
| ) | MEMORANDUM OF OPINION AND |
| COMMISSIONER OF SOCIAL SECURITY, ) | ORDER |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |
| ) | |

This action is before the Court upon the Report and Recommendation of the Magistrate Judge. After reviewing de novo the Magistrate's Report and Recommendation and the Defendant's objections, this Court SUSTAINS the objections and REJECTS the Report and Recommendation. The matter is REMANDED to the Magistrate Judge for further consideration.

**I.    Facts**

In August 1999, Plaintiff was at work when a weight fell from 20-30 feet overhead and struck him on the left shoulder and neck. As a result of this injury, Plaintiff has had a series of complications in his neck and back that cause him pain. In July 2000, Plaintiff also began to experience numbness in his hands consistent with carpal tunnel syndrome, for which he later had surgery in 2001. Additionally, in May 2002, Plaintiff underwent cervical decompression and fusion surgery for a cervical disc herniation caused by the 1999 injury. After that surgery, Plaintiff began to experience lower back pain and attended a pain management center. Following all of the above, various tests of Plaintiff's residual functional capacity ("RFC")

allowed for either complete or slightly limited use of his hands. In May 2003, Plaintiff claims to have become totally disabled, resulting in this litigation.

## II. Procedural History

On April 7, 2004, Plaintiff filed an application for Disability Insurance Benefits, relying on limitations related to a lumbar stenosis and degenerative disk disease. On May 18, 2007, an Administrative Law Judge ("ALJ") determined that Plaintiff had the RFC to perform his past relevant work, as well as other jobs of significant quantity in the national economy and thus was not disabled. On appeal, the Magistrate Judge properly dismissed four out of Plaintiff's five claims, but assigned error on the fifth. The Magistrate recommended that the case be remanded to the ALJ based on the ALJ's omission of a limitation regarding carpal tunnel in his hypothetical to the Vocational Expert ("VE"). This Court rejects that recommendation and remands the matter to the Magistrate for further consideration.

## III. Standard of Review

When the Magistrate Judge submits a Report, this Court is required to conduct a de novo review of those portions of the Report to which an objection has been made. 28 U.S.C. § 636(b). The Court need not articulate its reasons for ruling on objections so long as a de novo review was made. *Tuggle v. Seabold*, 806 F.2d 87, 92 (6th Cir. 1986).

This Court's review of the ALJ's decision is limited to determining whether substantial evidence, viewing the record as a whole, supports the ALJ's findings. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). Substantial evidence is more than a mere scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 306 U.S. 197, 229 (1938)). If

substantial evidence supports the ALJ's decision, the decision must be affirmed even if a reviewing court would decide the matter differently. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Moreover, the decision must be affirmed even if substantial evidence would also support the opposite conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Id.* However, in determining whether substantial evidence supports the ALJ's findings, the Court must examine the record as a whole and take into account what fairly detracts from its weight. *Wyatt v. Sec'y of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992). The Court must also consider whether the proper legal standards were employed. *Queen City Home Health Care Co. v. Sullivan*, 978 F.2d 236, 243 (6th Cir. 1992).

In order for an ALJ to find that a plaintiff suffers from a disability for which he should receive benefits, the plaintiff must be unable to engage in any substantial gainful activity due to the existence of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(1)(A); *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). This inability to engage in substantial gainful activity encompasses both Plaintiff's past employment and any other work existing in significant quantity in the economy. 42 U.S.C. § 423(d)(2)(A).

**IV.    Analysis**

This Court has considered Defendant's objections to the Report and Recommendation and has conducted a de novo review of the record. This Court recognizes that the Magistrate

3

Judge properly decided several of Plaintiff's arguments.  For example, the Magistrate properly concluded that the ALJ's decision to discount Plaintiff's credibility was supported by substantial evidence and in accordance with applicable law.  The Magistrate Judge also properly concluded that the ALJ weighed the correct factors in his analysis of Plaintiff's symptoms in spite of the fact that the ALJ did not specifically discuss the side effects of Plaintiff's medications in the opinion.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 507-08 (6th Cir. 2006) (finding that an ALJ need not discuss all of the specific evidence in his written decision).  Furthermore, the Magistrate Judge correctly concluded that Dr. Bressi's opinion was not the opinion of a treating physician within the meaning of 20 C.F.R. § 404.1502, because at the time of the opinion Dr. Bressi had only examined Plaintiff on one occasion.  However, the Magistrate Judge found that the ALJ committed reversible error by not including a limitation related to carpal tunnel in the hypothetical to the VE.  This Court disagrees.

Initially, the Court notes that the Magistrate properly set forth the law governing this type of error.

> Under *Varley v. Sec. of Health and Hum. Serv*., 820 F.2d 777, 779 (6th Cir. 1987), "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, *but only 'if the question accurately portrays [plaintiff's] individual physical and mental impairments.'"* (Emphasis added). Should the hypothetical fail to accurately describe a claimant's physical and mental impairments, the defect is fatal to both the vocational expert's testimony and the ALJ's reliance upon that testimony. *See Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 241 (6th Cir. 2002).

Doc. 15 at 26.  The Court, however, does not agree with the Magistrate's analysis of the facts as it relates to this law.

Plaintiff was diagnosed with carpal tunnel in the fall of 2000.  In July 2001, Plaintiff had surgery to release the carpal tunnel in both wrists.  After that time, two separate analyses of his

4

ability to use his hands indicated that Plaintiff would not have difficulty with grasp, manipulation, pinch, or fine coordination. These studies thoroughly tested Plaintiff's ability to use his hands and fingers in a variety of ways, including, simple, firm, and fine grasping in both hands. On a scale of never, occasionally, frequently, or constantly, the only related limitation in these studies was the limit of "firm grasp" to "frequent" in one of the two tests (frequently meaning 2.5 to 5.5 hours per day). Additionally, in the RFC of November 2004, the doctor included no limitation related to Plaintiff's carpal tunnel syndrome. Despite this record, the ALJ found that Plaintiff had severe carpal tunnel syndrome and that Plaintiff was limited to frequent hand and finger manipulations, apparently relying on the testimony of Plaintiff and the firm grasp limitation found in the singular test noted above.

Plaintiff suggests, and the Magistrate agreed, that the ALJ erred in not including a limitation of frequent hand and finger manipulation in his hypothetical to the VE. The Court disagrees.

> For clarity, the Court first details the hypothetical posed to the VE.
>
> Suppose you have a hypothetical individual limited to basically light exertion duties. That is standing/walking six hours out of an eight hour day. But limited to lifting 10 pounds maximum, 10 pounds repetitively. Pushing and pulling to the same amount. No operation of foot controls. No upper – no climbing of ropes, ladders, or scaffolds, and no crawling. Can, can reach and handle bilateral frequently with both upper extremities. Reach over and manipulate frequently with both upper extremities. No work at un-protective heights, around dangerous machinery, open flames [or] bodies of water, no concentrated exposure to fumes, odors, or respiratory irritants.

The ALJ later added limitations related to the side effects caused by Plaintiff's medications. With these limitations in place, the VE testified that Plaintiff could perform the duties of a surveillance system monitor. The VE testified that 400 of these positions existed locally and 7,500 existed in the state of Ohio.

During cross-examination of the VE, Plaintiff's counsel sought "to add the additional limitation that the hypothetical Claimant you described in the first hypothetical would not be able to perform work that is repetitive[.]"  Counsel then clarified that he meant repetitive work involving the upper extremities.  With that added limitation, the VE responded, "Well, then again I would still think he could do the surveillance system monitor.  I mean there's not going to be frequent or constant – you're, you're watching monitors."

The Court initially finds that the ALJ's hypothetical included each of the limitations related to Plaintiff's 1999 neck and back injury.  Furthermore, Plaintiff's counsel expanded the hypothetical to the VE on cross-examination by asking the VE whether a claimant unable to perform repetitive use of the upper extremities could still perform the work detailed by the VE.  This effectively included any limitations created by Plaintiff's carpal tunnel.  The VE replied that the claimant could still be a surveillance system monitor because it consists simply of "watching monitors."

Although this may not be the exact language Plaintiff would prefer to have in the record, this Court finds that it embodies the limitation of Plaintiff that corresponds to his carpal tunnel.  Specifically, Plaintiff contends as follows:  "'Repetitive use'" is clearly not the same as 'handling and manipulating frequently.'"  Doc. 17 at 1-2.  In this respect, Plaintiff attempts to elevate form over substance.  Regardless of the terminology difference suggested by Plaintiff, the VE's response was clear.  A limitation on the use of the upper extremities would not alter the conclusion that Plaintiff could perform work as a surveillance system monitor.  Accordingly, the Court finds that the VE's testimony included a response to a hypothetical that included each of Plaintiff's limitations.

The Dictionary of Occupational Titles ("DOT") provides additional support for the proposition that remand is inappropriate for the reason given by the Magistrate Judge.  The DOT listing for surveillance system monitor states that the job requires *no* handling or fingering and requires only the lowest level of finger dexterity.  (Doc. 16-2).  Thus, even if the ALJ had included the limitation *as worded by Plaintiff* in his hypothetical, the VE's response would have been exactly the same; the claimant could still perform the job of surveillance system monitor because it consists simply of "watching monitors."

This Court need not remand a case if such would be an "idle and useless formality[.]" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n.6 (1969)).  In this matter, remanding to the ALJ solely to change the language in the hypothetical from "repetitive" to "handle and manipulate frequently" would be a useless formality.  The Magistrate's conclusion, therefore, is in error.

In the Report, the Magistrate declined to determine whether the number of available surveillance system monitor positions was sufficient for the Commissioner to meet his burden.  Accordingly, the matter is REMANDED to the Magistrate Judge for consideration of this issue.  This determination should be made on the current record without additional briefing from the parties.

IT IS SO ORDERED.


November 10, 2008                                    */s/ John R. Adams* _____
DATE                                                 JUDGE JOHN R. ADAMS
                                                     UNITED STATES DISTRICT COURT